## Gotlieb Gabler v. The State.

### No. 3176. Decided April 25. 1906.

**1.—Murder in Second Degree—Special Venire—Jury and Jury Law—Statutes Construed.**

Where upon trial for murder the contingency provided for under the amendment of articles 3159a, 3175a, Revised Civil Statutes, and 647a, Penal Code, Act Twenty-ninth Legislature, page 17, affecting special venires, did not arise; the record showing that the special venire was drawn from the whole list of regular jurors selected by the jury commissioners at the last term of court and that this was the first venire that was drawn from the box and not put back in the box at all; and there was no question raised in regard to the special venire list to be used after the special venire drawn in the case was exhausted; and that as far as the court was advised the jury in the case was made up from the original special venire drawn from the jury for the week, there was no error.

**2.—Same—Evidence—Age and Qualification of Witness—Discretion of Court.**

On a trial for murder where it appeared from the record on appeal that the trial court was satisfied from other testimony as well as that adduced at the time the witness was asked as to his competency, and it not appearing from the testimony presented in the bill that the witness was disqualified, but that he knew

it was wrong to tell a story, etc., that his testimony was cogently given, the court did not err in permitting him to testify, the witness being twelve years of age.

### 3.—Same—Evidence—Conclusion of Witness.

Where on a trial for murder the State's witness was asked how high up was the blood on the wheel, and he answered without objection that it looked to him that the deceased in falling down slipped down on the side of the wheel, etc., there was no error.

### 4.—Same—Evidence—Animus—Shorthand Rendering of Facts by Witness.

Upon a trial for murder there was no error in permitting the State's attorney to ask the witness if he knew anything of the state of feeling between deceased and defendant, and upon an affirmative answer from the witness, to further show by said witness that such feeling was not friendly. This being in the nature of a shorthand rendering of the facts.

### 5.—Same—Evidence—Conclusion of Witness—Bill of Exceptions.

On a trial for murder where the bill of exceptions did not show the connection in which the testimony objected to was used, or that the witness was not testifying to facts, in answer to a question by the State whether there had been a struggle between the deceased and the horse at the place where he was found, and the certificate of the judge did not show that the witness was stating a conclusion, there was no error; especially where the answers of witness were favorable to defendant.

### 6.—Same—Bill of Exceptions—Cross-Examination—Husband and Wife.

On a trial for murder where the wife of defendant on cross-examination by the State was asked if on a certain night her husband did not run her off of the place, and the bill of exceptions did not show that the testimony attempted to be elicited was not in legitimate cross-examination, there was no error, especially as the witness answered in the negative.

### 7.—Same—Misconduct of Jury—Separation of Jurors.

Where upon appeal from a conviction of murder the record did not show that the defendant offered testimony to sustain his motion for new trial on the ground that the jury had separated, and it did not appear that if they separated they did not have permission to do so and were in charge of an officer, there was no error.

### 8.—Same—Absence of Judge During Trial—Affidavit—Motion for New Trial.

Where upon appeal from a conviction of murder the record does not show in defendant's motion for new trial supported by affidavit that the trial was not suspended while the judge stepped aside into an adjourning room, nor that he was not in control of the court proceedings and within view of the jury, there was no error.

Appeal from the District Court of Austin. Tried below before Hon. L. W. Moore.

Appeal from a conviction of murder in the second degree; penalty, eight years imprisonment in the penitentiary.

The opinion states the case.

No briefs of either parties have reached the hands of the Reporter.

*J. E. Yantis,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at eight years imprisonment in the penitentiary; hence this appeal.

The theory of the State was that appellant, who married the granddaughter of deceased, formed a grudge against deceased because deceased desired to get rid of him; that is, he was living with deceased

at the time of the homicide and had been for some time before, and had been informed by him that he could not support him any longer, that he must find some work. This occurred a month or such a matter before the homicide. From this time on he appears to have entertained a grudge against deceased. On the morning of the homicide deceased went out to the lot. Subsequently appellant went out there and came back and reported that Frank (one of two horses owned by deceased) had killed deceased. His wife and others immediately went to the lot, and found deceased lying close to the buggy house. He lived but a short time after he was so found. His wife states that he only mumbled something after she got to him,—understood him to say, Gotlieb. Three or four cuts were found on his forehead. The testimony was that these were straight cuts, and such cuts as would not ordinarily have been produced by the hoof of a horse. They not only cut the flesh but fractured the skull. The horse (Frank) was found with a piece of rope on him, which was cut. Two other pieces of rope were found in the lots near the trough, and these pieces were cut. The cuts were fresh, and there is some testimony to the effect that the pieces of rope did not correspond with the pieces of rope on the horse. It is shown that Frank and Charley were gentle work horses. From this and other testimony it is insisted by the State, and the conviction was predicated on the idea, that appellant struck deceased with some club or blunt instrument which caused his death; and had falsely stated that his death was caused by the horse kicking him. Appellant testified, and in his testimony attributed the death of deceased to the horse, Frank.

Appellant made a motion to quash the special venire on the ground that said venire was not drawn according to the law authorizing the drawing of special venires: neither the original statute nor the amended statute; that the jury commissioners appointed at the last term of the court did not draw any special venire list for the present term of said court, and that the court without legal authority appointed a jury commission at the present term of the court to draw special veniremen to do special venire service for this term of the court, and that said commission drew the list of special veniremen who were to act in this cause; that said commissioners appointed at this term of the court had no lawful authority to draw and select a special venire to act or perform said venire service in any case at this term of the court. The court appears to have heard proof on this question, which was as follows: "The district clerk testified that the venire in this case was drawn from the regular venire composed of four weeks of jurors selected by the jury commissioners at the last term of court. This was the first venire that was drawn from the box. The forty men, as under the order, were drawn, and that was separated as drawn and not put back in the box at all. The venire was drawn from the whole list of regular jurors for this term of the court, composed of one hundred and twenty men." This was

all the testimony elicited on the subject. So, we take it, that said special venire was drawn in accordance with the law on the subject. We do not understand any question was raised in regard to the special venire list to be used after the special venire drawn in the case was exhausted. At least, no issue was made on this subject, and no testimony was elicited. As far as we are advised, the jury was made up from the original special venire drawn in the case from the juries for the week, which consisted of one hundred and twenty names. We understand that the amendment of 1905 (Acts 29th Leg., p. 17), articles 3159a, 3175a, and 647a), provides for the special venire list to be drawn by the jury commissioners appointed by the court, out of which talesmen are to be drawn or selected when the special venire authorized by the old law has been exhausted. No recourse is to be had to this special venire list until the original special venire drawn in the case from the jury for the term has been exhausted, unless the contingency arises as provided in amended article 647a. Whenever the names of persons selected by the jury commissioners to do jury service for the term shall have been drawn one time to answer summons to a venire facias, then the names of the persons selected by the said commissioners, and which form the special venire list, shall be placed on tickets, etc. The contingency here provided for did not arise in this case for use of said special venire list, because this was the first jury drawn. While the amendment repeals all provisions of law in conflict therewith, there is no conflict between the mode pointed out for drawing a special venire, under the original articles 647 and 647a, so far as concerns the drawing of the special venire in this case. As shown by the proof introduced on the motion, the court pursued the method provided by law for getting the special venire in this case.

Appellant's bill of exceptions number 1 relates to the action of the court permitting State's witness, Robert Beyer, to testify. The bill shows that witness was twelve years old, and before he testified counsel for appellant asked leave to examine him as to his qualifications; and propounded the following question: "Do you know what they would do with you, if you were to swear to a lie?" and he replied, he was twelve years old. The question was repeated to him through an interpreter, and he then replied, he did not know. The court then examined him, and told him to step up there: "Son, do you know that it is wrong for you to tell a story? You are not going to tell a story, are you?" He replied, "Yes, sir, he knew it was wrong to tell a story." The court then asked him if he had been to a school; and he replied he had been one year, and said he could not read. The court then asked him if he knew what would become of him if he told a story; and he replied he did not know. The court then asked, if he had ever been taught the Devil would get him if he told a story; and to this he replied, that he had never seen the devil. The bill shows that counsel objected to witness testifying on the ground,

that he was absolutely unqualified to testify as a witness. The court overruled the objections, and explains the bill as follows: "The court heard testimony of this witness, both before and after objection of counsel, as to competency, and became satisfied of his competency." The competency of a witness is a question primarily for the court, but of course this is subject to review. While we believe the court should have stated the testimony he heard which satisfied him of the competency of the witness in order that we might properly review it, still no objection was made by appellant to accepting the bill as explained by the court. It appears that the court was satisfied from other testimony as well as that adduced; and it not appearing from the testimony presented in the bill that the witness was disqualified, we take it, that the witness stated that he knew it was wrong to tell a story but he did not know what would become of him if he did, and that he had never seen the Devil, would not disqualify him. As far as it went, his testimony seems to have been cogently given. The court did not err in permitting him to testify.

Appellant's second bill of exceptions raises the question as to the admissibility of the testimony of A. Schucaney, who was placed on the stand by the State. The district attorney asked him how high up was the blood on the wheel, to which he replied it looked like deceased in falling down, slipped on the side of the wheel. He was then asked, if it appeared to have been done as he fell, which witness answered in the affirmative. This was objected to because witness had no right to say how it appeared to him, and because it was stating a conclusion of the witness. The court explains this bill by stating, "that the witness was asked this question, 'How high up was the blood on the wheel?' And he answered without objection, 'Well, it looked to me like in falling down he slipped down on the side of the wheel.' The further question was asked, 'That is the way it appeared to you?' And without objection, the answer was, 'Yes, sir.' After above question was asked, and answered; witness was examined more fully upon the point, and located from memory the blood, but said he was not positive he saw blood there at all." From this explanation of the court, it appears that the witness was permitted, without objection, to answer the same question presented in the bill. Of course this explanation disposes of the matter.

While Charles Bierwith was on the stand testifying for the State, the district attorney asked him, if he knew anything of the state of feeling between old man Beyer and Gabler. He answered in the affirmative. The district attorney then asked him, if they were friendly or not. Over objection of appellant, witness answered, that they were not very good friends. Appellant objected because the same was a conclusion of the witness. We believe that this character of testimony is admissible; that is, a witness can give his opinion as to the state of feeling between the parties, as to whether it appeared friendly or unfriendly. This is in the nature of a shorthand rendering of the

facts. Of course, upon this matter the witness is subject to cross-examination. See illustrations on this subject in Lawson on Expert and Opinion Evidence, p. 466, et seq.

Appellant's fourth bill of exceptions shows that the district attorney asked witness William Boelacher, if there had been a struggle there between him and the horse—meaning if there had been any struggle between the horse and the dead man. Appellant objected, because it would be a conclusion of the witness; that witness could have testified the condition of the ground where the body was found, but could not give his conclusion as to whether or not there had been a struggle. We are not informed by this bill as to the connection in which this testimony was adduced; nor does it appear that the witness was not testifying to facts known and witnessed by him. The grounds of objection stated by counsel in the bill to the effect that witness could not state a conclusion, is not, as has been frequently held, a certificate of the judge to the effect that such fact existed, but is the mere statement of a ground of objection. However, the answer of the witness was favorable to appellant, as witness answered in the affirmative. The theory of appellant was that the horse had killed deceased by kicking him; and of course the opinion of witness that there appeared to have been a struggle between the horse and dead man was in line with his theory.

When Mrs. Gabler (wife of defendant) was upon the stand testifying in behalf of defendant, the district attorney, on cross-examination, asked, "If on a certain night her husband did not run her off of the place?" To which defendant objected, that it would cut no figure if defendant ran his wife off every night on the merits of this case; and furthermore, she could not be compelled to answer questions against her husband on cross-examination that were not inquired into on direct examination. The court permitted the witness to testify, over appellant's objection. The court explaining the bill says: "Above question was asked in connection with others relating to a difficulty between defendant and deceased one night several weeks before the killing. She answered this question in the negative, hence no injury could have been done the defendant." We think this disposes of the exception. However, the bill itself does not show that the testimony attempted to be elicited was not in legitimate cross-examination of appellant's wife; that is, in order for the bill to have made this manifest, it should have stated directly that it was not in cross-examination of any original testimony brought out by appellant, or the testimony brought out by appellant from his wife, should have been stated so that this court might determine the question whether or not this was legitimate cross-examination.

In motion for new trial appellant urges the misconduct of the jury, in that, as stated by him, they separated from each other, i.e., one, two and three of the jurors, and as many as three or four times during the progress of the trial, left the main body of the jury and

went out of the courthouse, and over and across the public square of the town. The defendant at the time called the court's attention to the fact and excepted to the same; that the affidavit of J. M. Mathis, Esq., an attorney in said cause, is attached, marked exhibit "A", showing the truth of this allegation. · This affidavit is substantially, as follows: That John M. Mathis, was of counsel for appellant. While said cause was in progress, the jurors trying said cause, at different times during said trial, or rather a part of the jurors separated from the main body of the jurors, and went over the square of the town, remaining out of the courthouse and away from the other jurors for a considerable length of time. That he called the court's attention to this fact, and excepted to the same at the time. If it can be considered that this question is sufficiently raised by this motion and accompanying affidavit, then the court should have heard the testimony on it, if offered. No such offer appears to have been made. An examination of the motion· for new trial and the accompanying affidavit fail to show that the jurors did not separate from the main body with the permission of the court and in charge. of an officer. Certainly, in order to have made an issue this should have been shown.

The motion for new trial and the affidavit of J. M. Mathis, Esq., further shows that during the trial of said cause, and while Boelscher was on the stand, that the trial judge withdrew from the bench, and went into the adjoining room to the district court room, for the purpose of urinating; thereby losing control of said cause. This affidavit does not show but that the trial was suspended while the judge stepped aside into an adjoining room; nor does it show that he was not within view of the jury so as to have retained control of the court proceedings.

We have examined the record carefully, and in our opinion it contains no reversible error, and the judgment is accordingly affirmed.

*Affirmed.*