## JEFF WILLIS v. THE STATE.

### No. 6726. Decided March 22, 1922.

1.—Murder—Jury and Jury Law—Suspended Sentence—Prejudice—Challenge.

A certain degree of prejudice against a defense has been held not a disqualification of a juror, although the rule would doubtless be otherwise if said juror's mind was such as he would be unwilling to accept a proved and established legal defense; besides, the juror was excused upon a peremptory challenge.

2.—Same—Juror—Challenge—Newspaper Reports.

Where a venireman has an opinion but it was formed from newspaper reports and hearsay, and was not such as would control in passing upon the merits of the case, the juror was qualified.

3.—Same—Objectionable Juror—Rule Stated—Challenge For Cause.

The term "objectionable juror" is not to mean that the juror is subject to challenge for cause, but his examination must show some degree of disqualification, as an established opinion, and where defendant was not compelled to exhaust his peremptory challenges, there was no reversible error. Following Mays v. State, 50 Texas Crim. Rep., 165, and other cases.

4.—Same—Confessions—Evidence—Answers to Questions.

Where the confession was in writing and in conformity with the statute, the mere fact that part of it was in answer to questions did not condemn it. Following Bailey v. State, 26 Texas Crim. App., 715, and other cases.

5.—Same—Evidence—Res Gestae—Self—Serving Declaration.

Where there was not such continuity in the transaction shown by the bill of exceptions as characterizes the testimony as res gestae, but the alleged conversation took place thirty or forty minutes after the homicide, there was no error in excluding same. Following Stephens v. State, 20 Texas Crim. App., 270, and other cases.

6.—Same—Evidence—Hearsay—Bill of Exceptions—Disease.

In the absence of more light than the bill of exceptions throws upon the transaction, the exclusion of the testimony is not shown to have been error, and seems to have been hearsay; nor was the testimony with reference to the treatment of deceased for gonorrhea material.

7.—Same—Dangerous Disposition of Deceased—Evidence.

The receipt of the evidence as to the disposition of the deceased when its pertinency was revealed rendered harmless its previous exclusion.

8.—Same—Evidence—Shorthand Rendition—Opinion of Witness.

Upon trial of murder there was no error in admitting in evidence testimony of defendant's demeanor, that he was excited and crying; nor, was there any error in permitting the witness to express himself in describing

such demeanor of defendant. Following Gabler v. State, 49 Texas Crim. Rep., 627, and other cases.

### 9.—Same—Charge of Court—Amendments—Practice on Appeal.

Where such objections as were made to the charge of the court appear to have been met by amendment before it was read to the jury and the charge was otherwise proper, there was no reversible error.

Appeal from the District Court of Falls. Tried below before the Honorable Prentice Oltorf.

Appeal from a conviction of murder; penalty, fourteen years imprisonment in the penitentiary.

The opinion states the case.

*Rice & Bartlett*, for appellant.—On question of selecting jurors: Rothschild v. State, 7 Texas Crim. App., 519; Livar v. State, 26 id., 115;

*R. G. Storey*, Assistant Attorney General, for the State.—Cited cases in opinion.

MORROW, Presiding Judge.—Conviction is for murder; punishment fixed at confinement in the penitentiary for a period of fourteen years.

The deceased, Josephine Willis, was the wife of the appellant. She had, according to his testimony, lived with him before their marriage. Afterwards she determined to separate from him; had secured a situation and engaged the witness Ligon to accompany her to the residence of the appellant and remove her household goods in his wagon. According to Ligon, they met the appellant, and he was told of their mission. He said, in substance, that the deceased had married the appellant and had afterwards left him. Ligon asked the appellant about the whereabouts of one, Newt Watkins, and was informed that he was at home and that as he (appellant) was going to town, he would call Watkins up. Before reaching the home of the appellant, the witness and the deceased were overtaken by the appellant and Watkins in company with each other, and Watkins demanded, as a condition precedent to permitting the removal of the property the payment of a sum of money. This money related to an advancement made in obtaining the divorce from her former husband, and was paid. When the witness and the deceased approached the home of the appellant, he was chopping cotton in his field, about thirty or forty yards from the house. This they could see from a distance of about two hundred yards. When they reached the house, the appellant was not in sight, but his daughter was near by. When they reached the enclosure, the deceased got out and opened the gap. The wagon was driven in front of the house. Appellant ran out of the

house with a gun. Ligon said: "Don't shoot that woman;" she began hollowing not to shoot and ran. He followed her and fired. She fell and was sitting on the ground when the appellant approached, saying: "You God-damn lying bitch," and fired. She hollowed: "Oh, my Lord," and continued groaning and moaning and begging him not to shoot her. He cursed her and fired the third shot while very close to her. She did nothing to him when he shot her; and had not spoken to him.

The appellant's confession was introduced in which he said:

"When she was opening the gate, I ran out from behind the house with the gun, and she threw the gate down and broke and ran. I ran after her. I shot her once while she was holding the gate. I don't know whether she had her back to me or not. I told her she wasn't treating me right. Then she ran up the road. I did not shoot at her while she was running. I caught up with her at the corner. Then she ran out of the road in a cotton patch. She fell down in the cotton patch. I shot her once in the cotton patch. She whirled around and I was close to her and I shot her when she whirled. I don't know whether I shot her three times or not. While I was after her, she asked me not to shoot her any more, that she would stay with me until she died. After she was down, me and my girl Annie brought her to the house and put her on the porch. After this I went back to the field and went to work."

In the confession, appellant described the meeting of the deceased and the witness Ligon and overtaking them in company with Mr. Watkins, and said:

"After I got to the house, I got to thinking about how she had done me and I decided that if she did not pay me, I was going to hurt her. I got my gun a little while before she got to the house. I was back of the house."

In his testimony, appellant described his relations with the deceased, their living together before their marriage; his furnishing her money for her divorce and aiding her while she was sick; her harsh conduct toward his children, and threatening conduct towards him. At one time she chased him with a gun; that she told him that she was not going to live with him, and that she was "coming to get her things or die or go to hell." He described the meeting with her as mentioned by the witness Ligon. The witness Watkins said to appellant: "Jeff, you go on home," and he did so. From his home, he saw two wagons coming, and when they came, the deceased got out and opened the gate. He came from behind the house, and deceased asked him where he was going. He replied: "Where are you going?" She said: "Hell, I'm going in to get my things." Appellant then said:

"When she said that, I come from around the house and shot. She ran, and I was gaining on her so fast that some way or another she whirles and comes back to me with her hands raised over her head,

and about the time she comes back to me, I shot again. I didn't shoot any more. She then made it up to the corner of the wire fence and she was coming across the ditch when I shot her. I was pretty close to her when I shot her the first time. I didn't shoot her but twice. I was afraid of her. I'll tell the truth, the reason I killed that woman was because I was afraid of her; I was scared of her, that is the honest truth. The threats and everything she made to me, I got out of her way and saved myself, and at that time I was just scared of her. After the shooting I went out in the field and chopped cotton. I was excited, and when Mr. Watkins got there, I was crying.''

Several bills of exceptions relate to the action of the court in ruling upon the qualification of veniremen. A juror stated that he had an opinion which would probably influence his verdict, but thought that he could disregard it. He was excused on the State's challenge for cause. The details of his examination are not given in the bill, and we think it fails to disclose an abuse of the discretion vested in the trial judge under subdivision 13 of Article 692 of the Code of Crim. Proc. For aught revealed by the bill the opinion may have been fixed and founded on knowledge of the facts or communications with witnesses. Rothschild v. State, 7 Texas Crim. App. 519, and other cases cited in Vernon's Texas Crim. Statutes, Vol. 2, p. 377, note 37. The presumption in favor of the court's action is not overcome.

The second bill relates to the prejudice of the juror against the suspended sentence law. A certain degree of prejudice against a defense has been held not a disqualification. Cannon v. State, 41 Texas Crim. Rep. 467; Cyc. of Law & Proc., Vol. 24, p. 283, subdivision 5 of the text. As stated therein, the rule would doubtless be otherwise if the said juror's mind was such as he would be unwilling to accept a proved and established legal defense. Peoule v. Carpenter, 6 N. E. Rep. 584; Kennedy v. State, 19 Texas Crim. App. 618. He was excused upon peremptory challenge by the State.

The venireman Freeman had an opinion, but if we properly comprehend his testimony, it was formed from newspaper reports and hearsay and was not such as would control in passing upon the merits of the case. Upon this phase of the matter, we think the action of the trial court was well within the discretion conferred upon it by subdivision 13, Article 692, supra. The juror stated that he was prejudiced against the suspended sentence law, but explained that he thought it had been abused, and that there were cases in which it should be applied. He was excused, upon peremptory challenge by the appellant.

In Cannon's case, supra, the jurors stated that they were prejudiced against the plea of insanity, which was one of the issues in the case. They had no opinion as to the merits of appellant's plea of insanity, and their opposition to the plea was founded upon their belief that it was often unfounded; that if accepted, they would give consider-

ation to the testimony relating to that defense the same as that given to any other defense interposed. The jurors were not held disqualified upon the authority of Thompson v. State, 19 Texas Crim. App. 593. In holding Freeman qualified, the court, in our opinion, did not err.

The examination of the juror Greer portrayed a state of mind similar to that pertaining to the venireman Freeman. Appellant's challenge for cause was overruled, and the request for an additional peremptory challenge was also denied. The attitude of Greer doubtless would bring him within the description of an "objectionable juror" but not a disqualified one. It is said that by the term "objectionable juror" is not meant that the juror is subject to challenge for cause, but his examination must show some degree of disqualification, such as the formation of some sort of opinion as to the guilt or innocence of the defendant, although not necessarily a disqualifying opinion. Branch's Ann. Texas Penal Code, Sec. 541; Keaton v. State, 40 Texas Crim. Rep. 145; Connell v. State, 45 Texas Crim. Rep. 153. The complaint that an objectionable juror was forced upon the accused is not available where it appears that he has not been compelled to exhaust his peremptory challenges by some erroneous ruling of the court. Mays v. State, 50, Texas Crim. Rep. 165; Morrison v. State, 40 Texas Crim. Rep. 473. See also Sanchez v. State, 236 S. W. Rep. 736 and cases therein listed.

The confession of the appellant was in writing and in conformity with the requirements of the statute touching a confession made by one under arrest. As qualified, there is nothing challenging the voluntary character of the confession, save that part of it was in answer to questions. We do not understand that this condemns it. Branch's Ann. Tex. Penal Code, Sec. 67; Bailey v. State, 26 Texas Crim. App. 715; Tidwell v. State, 40 Texas Crim. Rep. 40; Carmichael v. State, 54 S. W. Rep. 904; Cyc. of Law & Proc., Vol. 12, p. 468.

Appellant sought to relate a conversation he had with another after the homicide. The proffered testimony, in substance, was that the appellant said that his wife and a white man were coming to get him and that he though they were going to do him serious bodily harm and he shot the deceased in defense of his life and property. This was offered as part of the res gestæ. The alleged conversation took place thirty of forty minutes after the homicide. At the time the witness encountered the appellant, he was at work in his field. The intervening incidents are not revealed by the bill. The statement of facts, however, shows that after killing his wife, appellant and his daughter picked her up in the field and carried her to the house; that he then laid her on the porch and went to work in his field, where he was subsequently seen by the witness. There is not such continuity in the transaction shown by the bill as characterizes the testimony as res gestæ. Stephens v. State, 20 Texas Crim. App.

270; Lynch v. State, 24 Texas Crim. App. 361; Chalk v. State, 35 Texas Crim. Rep. 126; 19 L. R. A., 743; Branch's Ann. Tex. Penal Code, Sec. 84.

While the witness Watkins was on the stand, appellant sought to prove by him that the appellant had, before the homicide, complained that the deceased, while she was living with him, was beating his children. Deceased was not present. In the absence of more light than the bill throws upon the transaction, the exclusion of the testimony is not shown to have been error. It seems to have been hearsay.

Appellant offered testimony to the effect that the deceased had been treated for gonorrhea before her marriage to the appellant. The relevancy of this evidence is not perceived.

Witnesses were offered by the appellant touching the dangerous character and disposition of the deceased. At the time they were presented, there was in the opinion of the trial judge no evidence of any overt act, threat or demonstration that rendered such evidence relevant. Subsequently, the matter was gone into and the witnesses whose testimony had previously been excluded were called to testify upon the subject. The receipt of the evidence when its pertinency was revealed, rendered harmless its previous exclusion.

The witnesses Watkins and Fulton, after the homicide, saw the appellant at the same time. Watkins, for the State, testified that appellant seemed to be in a crazy mood; did not realize what he was doing; was not crying, but did not seem like he was mad; seemed to be in a crazy state of mind, but not insane. Fulton, of whose evidence complaint is made, testified that he seemed to be sullen and did not have much to say; that he did not see the appellant crying. All this took place about thirty or forty minutes after the homicide. Appellant's demeanor at the time was not irrelevant especially in view of his own testimony that when Watkins and Fulton arrived he was excited and crying. Nor is there any harmful transgression of the rules of evidence disclosed by the manner in which the witness Fulton expressed himself in describing the demeanor of the appellant. His evidence apparently comes within the rule exemplified by many decisions of this court collated in Branch's Ann. Tex. Penal Code, Sec. 132, distinguishing a shorthand rendition of the facts from the mere expression of opinion. See Miller v. State, 18 Texas Crim. App. 259; Rogers v. State, 65 Texas Crim. Rep., 105; 143 S. W. Rep. 633; Gabler v. State, 49 Texas Crim. Rep. 627; Lewis v. State, 33 Texas Crim. Rep. 618, and other cases collated.

In addition to instructing the jury upon the law of murder; the court embraced in his charge, instructions covering the law of manslaughter and self-defense. Such objections as were made to the charge appear to have been met by amendments before it was read to the jury, and so far as we are able to appraise it, it presented in

an unexceptionable manner all defensive theories and issues arising from any view of the evidence.

The bills of exceptions which we have not mentioned in the opinion have been carefully examined. In none of them is there found or pointed out any erroneous ruling or matter which we deem of sufficient consequence to justify its discussion.      . ·

The judgment must therefore be affirmed.

*Affirmed.*